## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

TREVOR JORDET,

                Plaintiff,

        v.

JUST ENERGY SOLUTIONS, INC.,

                Defendant.

Civil Action No.

**JURY TRIAL DEMANDED**

### CLASS ACTION COMPLAINT

Plaintiff Trevor Jordet, by his attorneys, as and for his class action complaint, alleges, with personal knowledge as to his own actions, and upon information and belief as to those of others, as follows:

### NATURE OF THIS CASE

1.      This action seeks to redress the deceptive and bad faith pricing practices of Just Energy Solutions, Inc. ("Just Energy" or "Defendant") that has caused thousands of Pennsylvania consumers to pay considerably more for their natural gas than they should otherwise have paid.

2.      Just Energy has exploited the deregulation of the retail natural gas market in Pennsylvania by luring consumers into switching natural gas suppliers using a bait-and-switch scheme designed to deceive reasonable consumers.  Just Energy lures its customers into switching to its natural gas supply service by offering teaser rates that are fixed for a limited period of time and initially lower than the local utilities' rates for natural gas.  Once the initial rate expires, Just Energy switches its customers over to its market variable rate, which is invariably higher than the initial teaser rate.  Just Energy's market variable rate is likewise

{00291715 }

substantially higher than the competing local utilities' and independent energy companies' ("ESCOs") rates, and is disconnected from true market-based rates.

3.      As a result, Pennsylvania consumers are being fleeced millions of dollars in exorbitant charges for natural gas.

4.      This suit is brought pursuant to the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), and Pennsylvania common law of on behalf of a class of Pennsylvania consumers who were charged a variable rate for natural gas by Just Energy from March 2012 to the present (the "Class" or "Class Members").  It seeks, *inter alia*, injunctive relief, actual damages and refunds, treble damages, punitive damages, attorneys' fees, and the costs of this suit.

## PARTIES

5.      Plaintiff Trevor Jordet is a citizen of Pennsylvania residing in Norristown, Pennsylvania.  Mr. Jordet was a customer of Just Energy from approximately 2012 through approximately February 2018, and as a result of Just Energy's deceptive conduct, he incurred excessive charges for natural gas.[1]

6.      Defendant Just Energy was incorporated in California, and its principal place of business or corporate headquarters is in Houston, Texas.

---

[1] Mr. Jordet initially contracted with Commerce Energy for his natural gas services.  According to a Just Energy press release, on April 1, 2017, Commerce Energy rebranded as Just Energy Solutions Inc.  Press Release, JUST ENERGY GROUP INC., *Commerce Energy Sheds Name to Begin Operating Under the Just Energy Brand* (Apr. 3, 2017), http://www.marketwired.com/press-release/commerce-energy-sheds-name-to-begin-operating-under-the-just-energy-brand-nyse-je-2207232.htm.  "The change represents a transition in name only, and does not affect the status of existing customer contracts, business licenses, or any other legal documentation."  *Id.*

7.     Upon information and belief, Just Energy provides natural gas and natural gas services to thousands of customers in Pennsylvania, and in other states including but not limited to Illinois, Michigan, and Virginia.

## JURISDICTION

8.     The Court has specific personal jurisdiction over Defendant Just Energy because Plaintiff's claims arise out of and relate to Defendant's conduct in Pennsylvania.

9.     Subject matter jurisdiction in this civil action is authorized pursuant to 28 U.S.C. § 1332(d)(2)(A), as the amount in controversy is in excess of $5 million and Plaintiff and many class members are citizens of Pennsylvania, whereas Defendant is a citizen of California and Texas.

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2).

## OPERATIVE FACTS

### The History Of Pennsylvania's Energy Industry

11.     In 1999, Pennsylvania's state legislature made the decision to deregulate the market for retail natural gas and natural gas supply by passing the Natural Gas Choice and Competition Act, a major break with past policy.  Before deregulation, retail residential consumers had to purchase both the supply and the delivery of natural gas from the local utility. The public policy motivation for allowing consumers a choice of natural gas suppliers is to enable retail customers to take advantage of competition between suppliers in the open market, as compared to the monopolistic and heavily regulated utility.  The premise behind this policy is that competition would result in ESCOs being more aggressive than the monopoly utility in reducing wholesale purchasing costs and thereby lower prices and costs for retail customers.

12.     ESCOs such as Just Energy have various options to buy natural gas at wholesale for resale to retail customers, including: owning natural gas production facilities; purchasing natural gas from wholesale marketers and brokers at the price available at or near the time it is used by the retail consumer; and by purchasing natural gas in advance of the time it is used by consumers, either by purchasing physical gas to be used in the future or by purchasing futures contracts for the delivery of natural gas in the future at a predetermined price.  The purpose of deregulation is to allow ESCOs to use these and other innovative purchasing strategies to reduce natural gas costs, and pass those savings on to consumers.

13.     Consumers who do not choose to switch to an ESCO for their energy supply continue to receive their supply from their local utility.  However, if a customer switches to an ESCO, the customer will have his or her energy "supplied" by the ESCO, but still "delivered" by their existing utility.  The customer's existing utility continues to bill the customer for both the energy supply and delivery costs.  The only difference to the customer is which company sets the price for the customer's energy supply.

14.     As part of the deregulation plan, ESCOs (like Just Energy) do not have to file or seek approval for the natural gas rates they charge with the state public services commissions or the method by which they set their rates.

15.     Just Energy exploits the deregulation and the lack of regulatory oversight in the energy market by luring customers with enticing teaser rates and false promises that it will offer market-based variable rates when, in fact, Just Energy's rates are substantially higher than its own fixed rates, competing ESCOs rates, and the local utilities' rates, and are untethered from changes in wholesale rates.

**Mr. Jordet's Experience**

16.     Just Energy solicited Mr. Jordet in or around 2012, representing that it would charge a rate lower than the local utility, PECO.  Expecting to save money on his natural gas bills, Mr. Jordet expressed interest in Just Energy's offer.

17.     Just Energy then provided Mr. Jordet its standard and uniform residential natural gas disclosure statement and terms of service (the "Agreement") that would govern their relationship.  Just Energy also provided Mr. Jordet with a rescissionary period during which he could rescind the Agreement prior to its commencement should he not agree to its terms.  During that rescissionary period, the Agreement served as a solicitation in which Just Energy identified the basis upon which the promised market-based variable rate would be determined.

18.     According to the Agreement, customers are initially charged a fixed introductory rate (the "Introductory Rate") for a set number of months.  Once the Introductory Rate expires, Just Energy automatically converts customers to its monthly variable rate.

19.     The Agreement also represents that the variable rate, which is set by Just Energy, would be set "according to business and market conditions, including but not limited to, the wholesale cost of natural gas supply, transportation, distribution and storage[.]"

20.     Any reasonable consumer, including Mr. Jordet, would understand based on Just Energy's representations concerning business and market conditions that its variable rate would primarily reflect the two main components of business and market conditions facing ESCOs like Just Energy, namely the wholesale cost of purchasing the natural gas it sells to its customers, and the business and market prices charged by Just Energy's competitors (*i.e.*, the local utility and other ESCOs).

21.    Mr. Jordet switched from PECO to Just Energy for his natural gas services in or around 2012, and cancelled his Agreement with Just Energy in February 2018.  The following table identifies the billing periods for the past twenty-two months, the variable rate Just Energy charged Mr. Jordet, the corresponding rate PECO would have charged (which, as discussed below, is a reasonable representation of a market-based rate), and the differences between Just Energy's and PECO's contemporaneous rates:

| Billing Period | Just Energy Rate Per Ccf[2] | PECO Rate Per Ccf | Difference | Percent Difference |
|---|---|---|---|---|
| 4/15/16 – 5/16/16 | $0.5895 | $0.3422 | $0.2453 | 71.3% |
| 5/16/16 – 6/15/16 | $0.6725 | $0.3501 | $0.3224 | 92.1% |
| 6/15/16 – 7/15/16 | $0.7183 | $0.3501 | $0.3858 | 105.2% |
| 7/15/16 – 8/15/16 | $0.7183 | $0.3501 | $0.3682 | 105.2% |
| 8/15/16 – 9/14/16 | $0.744 | $0.2916 | $0.4524 | 155.1% |
| 9/14/16 – 10/13/16 | $0.7056 | $0.2916 | $0.414 | 142% |
| 10/13/16 – 11/11/16 | $0.6014 | $0.2916 | $0.3098 | 106.2% |
| 11/11/16 – 12/14/16 | $0.6099 | $0.3215 | $0.2884 | 89.7% |
| 12/14/16 – 1/18/17 | $0.616 | $0.3215 | $0.2945 | 92% |
| 1/18/17 – 2/16/17 | $0.616 | $0.3215 | $0.2945 | 91.6% |
| 2/16/17 – 3/17/17 | $0.616 | $0.3993 | $0.2167 | 54.3% |
| 3/17/17 – 4/17/17 | $0.616 | $0.3993 | $0.2167 | 54.3% |
| 4/17/17 – 5/16/17 | $0.616 | $0.3993 | $0.2167 | 54.3% |
| 5/16/17 – 6/15/17 | $0.616 | $0.4465 | $0.1695 | 38% |

[2] Quantities of natural gas are occasionally measured in terms of volume.  A Ccf is a volumetric measure of the amount of gas contained in a space equal to one hundred cubic feet.

| Billing Period | Just Energy Rate Per Ccf[2] | PECO Rate Per Ccf | Difference | Percent Difference |
|---|---|---|---|---|
| 6/15/17 – 7/17/17 | $0.616 | $0.4465 | $0.1695 | 38% |
| 7/17/17 – 8/15/2017 | $0.7233 | $0.4465 | $0.2768 | 62% |
| 8/15/17 – 9/13/17 | $0.84 | $0.3858 | $0.4542 | 117.7% |
| 9/13/17 – 10/14/17 | $0.84 | $0.3858 | $0.4542 | 117.7% |
| 10/14/17 – 11/10/17 | $0.84 | $0.3858 | $0.4542 | 117.7% |
| 11/10/17 – 12/13/17 | $0.844 | $0.3991 | $0.7779 | 111% |
| 12/13/17 – 1/17/18 | $0.84 | $0.3991 | $0.4409 | 110.5% |
| 1/17/18 – 2/15/18 | $0.84 | $0.3991 | $0.4409 | 110.5% |

22.    Additionally, the following table likewise identifies the billing periods for the past twenty-two months, Just Energy's variable rate, and the U.S. Energy Information Administration's ("EIA") official cost of wholesale natural gas delivered to Pennsylvania ("Citygate rate")[3]:

| Billing Period | Just Energy Rate Per Ccf | Citygate Rate Per Ccf |
|---|---|---|
| 4/15/16 – 5/16/16 | $0.5895 | $0.328 |
| 5/16/16 – 6/15/16 | $0.6725 | $0.435 |
| 6/15/16 – 7/15/16 | $0.7183 | $0.636 |
| 7/15/16 – 8/15/16 | $0.7183 | $0.655 |
| 8/15/16 – 9/14/16 | $0.744 | $0.557 |
| 9/14/16 – 10/13/16 | $0.7056 | $0.592 |

---

[3] *Natural Gas Citygate Price in Pennsylvania*, EIA, https://www.eia.gov/dnav/ng/hist/n3050pa3m.htm (last visited Apr. 4, 2018).

| Billing Period | Just Energy Rate Per Ccf | Citygate Rate Per Ccf |
|---|---|---|
| 10/13/16 – 11/11/16 | $0.6014 | $0.398 |
| 11/11/16 – 12/14/16 | $0.6099 | $0.408 |
| 12/14/16 – 1/18/17 | $0.616 | $0.372 |
| 1/18/17 – 2/16/17 | $0.616 | $0.407 |
| 2/16/17 – 3/17/17 | $0.616 | $0.420 |
| 3/17/17 – 4/17/17 | $0.616 | $0.386 |
| 4/17/17 – 5/16/17 | $0.616 | $0.507 |
| 5/16/17 – 6/15/17 | $0.616 | $0.537 |
| 6/15/17 – 7/17/17 | $0.616 | $0.685 |
| 7/17/17 – 8/15/2017 | $0.7233 | $0.730 |
| 8/15/17 – 9/13/17 | $0.84 | $0.623 |
| 9/13/17 – 10/14/17 | $0.84 | $0.542 |
| 10/14/17 – 11/10/17 | $0.84 | $0.467 |
| 11/10/17 – 12/13/17 | $0.844 | $0.408 |
| 12/13/17 – 1/17/18 | $0.84 | $0.349 |
| 1/17/18 – 2/15/18 | $0.84 | $0.3991 |

23.    That Just Energy's variable rate is not in fact a competitive market rate based on the wholesale cost of natural gas is demonstrated by the fact that Just Energy's variable rate was consistently significantly higher than PECO's rates and that the rate did not fluctuate with commodity prices.

24.     Indeed, from April 2016 through February 2018 (his most recent bill), Just Energy's rate was higher than PECO's rate *every single month*.  In fact, of the twenty-two months listed above, Just Energy's variable rate was *more than double* PECO's rate for ten months.  In fact, on average, Just Energy's rate was 93% higher than PECO's rate.

25.     PECO's rates serve as an ideal indicator of market conditions because they are based on the wholesale natural gas and the associated market costs (*e.g.*, procurement costs, transportation, distribution, and storage -- the same costs ESCOs such as Just Energy incur). PECO and other Pennsylvania utilities can only adjust its rates quarterly based on changes in its wholesale supply costs and simply pass actual costs on to their customers -- without any markups or profit.[4]  Because Pennsylvania utility rates do not include any profits, they serve as pure reflections of average market costs of wholesale natural gas, associated costs, and distribution over time.

26.     While PECO and Just Energy may not purchase natural gas and associated costs in precisely the same manner, over time the wholesale costs they incur should be commensurate. In fact, Just Energy has a tactical advantage over the utility as it can purchase natural gas from a highly competitive natural gas market for future use, and therefore its cost for purchasing natural gas should at the very least reflect (if not undercut) market prices, albeit over a longer term. Therefore, while PECO's rates may not precisely match Just Energy's rates, they should be commensurate.  But they are instead wildly disparate.

27.     For example, when PECO's rate declined from $0.3501 to $0.2916 per Ccf (a decline of 17%) from August to September 2016, Just Energy increased its already exorbitant

---

[4] *Price to Compare Sample Methodology*, PECO, https://www.peco.com/SiteCollectionDocuments/Sample%20Gas%20PTC%20Methodology.pdf (last visited Apr. 4, 2018).

prices from \$0.7183 to \$0.744 per Ccf (an increase of 4%).  Likewise, when PECO's rate

declined from \$0.4465 to \$0.3858 per Ccf (decreasing by 14%) between August to September

2017, Just Energy's rate rose from \$0.7233 to \$0.84 per Ccf (increasing 16%).  Even when

PECO's rate remained constant at \$0.3501 per Ccf between June and July 2016, Just Energy's

rate increased from \$0.6725 to \$0.7183 per Ccf (an increase of 7%).

28.    The disparities are also evident over time.  For instance, while PECO's rate

generally declined between June 2017 and February 2018 from \$0.4465 to \$0.3991 per Ccf

(declining 11%), Just Energy's rates increased from \$0.616 to \$0.84 per Ccf (increasing by

36%).

29.    Just Energy's stark rate disparities with those of the local utility, wherein Just

Energy's rates were higher 100% of time from May 2016 through February 2018, considered

together with the fact that Just Energy's rates do not reflect market fluctuations, demonstrate that

Just Energy does not charge a rate based on business and market conditions as it states in its

Agreement, but rather gouges its customers by charging outrageously high rates.

30.    The disconnect between Just Energy's variable rate and changes in wholesale

costs is also demonstrated by the fact that Just Energy's variable rate often increased while

wholesale costs declined.  The Citygate rate identified by the EIA is the actual wholesale price of

natural gas in Pennsylvania.  Between August 2017 and February 2018, the Citygate rate

drastically declined from \$0.730 to \$0.3991 per Ccf (decreasing 45%), PECO's variable rate

steadily increased from \$0.7233 to \$0.84 per Ccf (increasing 16%).

31.    The cost of wholesale natural gas is the primary component of the non-overhead

costs Just Energy incurs.  Indeed, Just Energy concedes and represents as much, listing "the

wholesale cost of natural gas supply" as the first factor in its list of business and market pricing components.

32.     Just Energy's identification of "business" conditions among the factors it considers likewise does not justify its outrageously high rates.  A reasonable consumer might understand that an ESCO will attempt to make a reasonable margin on the commodity it sells to consumers.  However, such a consumer would also expect that such profits would be consistent with profit margins obtained by other suppliers of natural gas in the market, and also that Just Energy's profiteering at the expense of its customers would not be so extreme that its rate bears no relation to market prices but is instead outrageously higher.  That other ESCOs' rates are lower, even though they purchase natural gas from the wholesale market, demonstrates that Just Energy sets its profit margins in bad faith.  Similarly, PECO's rate reflects a rate that Just Energy could charge (because Just Energy could purchase natural gas in the same way and at the same cost as PECO) plus a reasonable margin.  No reasonable consumer would consider a margin that is on average 93% to be fair or commercially reasonable.

33.     Any potentially conceivable additional business and market costs that are not explicitly disclosed in the Agreement (such as taxes, fees, and assessments) are relatively insignificant in terms of the overall costs Just Energy incurs to provide retail natural gas, and do not fluctuate over time.  Therefore, these other cost factors cannot explain the drastic increases in Just Energy's variable rate or the reason its rates are disconnected from changes in wholesale costs.

34.     Thus, Just Energy's statements with respect to the natural gas rates it will charge are materially misleading because consumers do not receive a price based on the specified factors like wholesale costs and competitor pricing.  Instead, consumers are charged rates that are

substantially higher (often more than double) those of competitors and untethered from the

specified market factors.  Just Energy intentionally fails to disclose this material fact to its

customers because no reasonable consumer -- including Mr. Jordet -- who knows the truth about

Just Energy's exorbitant rates would choose Just Energy as a natural gas supplier.

35.     Just Energy's statements and omissions regarding its natural gas rates are

materially misleading because the only consideration for any reasonable consumer when

choosing an energy supplier is price.

36.     In fact, all that Just Energy offers customers is natural gas delivered by local

utilities, a commodity that has the exact same qualities as natural gas supplied by other ESCOs

or local utilities.  Other than potential price savings, there is nothing to differentiate Just Energy

from other ESCOs or local utilities.  Accordingly, the potential for price savings is the only

reason any reasonable consumer would enter into a contract for natural gas supply with Just

Energy.

37.     Just Energy knows full well that it charges a rate that is unconscionably high, and

the misrepresentations it makes with regard to the rate being market-based were made for the

sole purpose of inducing consumers to sign up for Just Energy's natural gas supply so that it can

reap outrageous profits to the direct detriment of its consumers without regard to the

consequences high utility bills cause such consumers.  As such, Just Energy's actions were

actuated by actual malice or accompanied by wanton and willful disregard for consumers' well-

being.

## CLASS ACTION ALLEGATIONS

38.     Plaintiff brings this action on his own behalf and additionally, pursuant to Rules

23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of a class of all Just

Energy customers charged a variable rate for residential natural gas services by Just Energy from April 2012 to the present (the "Class" or "Class Members").

39.     Plaintiff also brings this action on behalf of a sub-class of Just Energy's Pennsylvania customers charged a variable rate for residential natural gas services by Just Energy from April 2012 to the present (the "Pennsylvania Sub-Class").

40.     Excluded from the Class and Pennsylvania Sub-Class (collectively, the "Classes") are Defendant; any parent, subsidiary, or affiliate of Defendant; any entity in which Defendant has or had a controlling interest, or which Defendant otherwise controls or controlled; and any officer, director, legal representative, predecessor, successor, or assignee of Defendant.

41.     This action is brought as a class action for the following reasons:

a.     The Classes consist of thousands of persons and is therefore so numerous that joinder of all members, whether otherwise required or permitted, is impracticable;

b.     There are questions of law or fact common to the Classes that predominate over any questions affecting only individual members, including:

i.     whether Defendant violated 73 PA. CONS. STAT. § 201 *et seq.*;

ii.     whether Defendant breached its contract with its consumers by charging variable rates not based on the factors specified in the customer agreements;

iii.     whether Defendant breached the covenant of good faith and fair dealing by exercising its unilateral price-setting discretion in bad faith, *i.e.*, to price gouge;

iv.     whether Plaintiff and the Class have sustained damages and, if so, the proper measure thereof; and

v.     whether Defendant should be enjoined from continuing to charge variable rates not based on market conditions;

      c.      The claims asserted by Plaintiff are typical of the claims of Class Members;

      d.      Plaintiff will fairly and adequately protect the interests of the Classes, and Plaintiff has retained attorneys experienced in class and complex litigation, including class litigation involving consumer protection and ESCOs;

      e.      Prosecuting separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members that would establish incompatible standards of conduct for Defendant;

      f.      Defendant has acted on grounds that apply generally to the Classes, namely representing that its variable rates are based on market conditions, *i.e.*, competitive and reflective of the wholesale market, when Defendant's rates are in fact substantially higher, such that final injunctive relief prohibiting Defendant from continuing its deceptive practices is appropriate with respect to the Classes as a whole;

      g.      A class action is superior to other available methods for the fair and efficient adjudication of the controversy, for at least the following reasons:

      i.      Absent a class action, as a practical matter Class Members will be unable to obtain redress, Defendant's violations of its legal obligations will continue without remedy, additional consumers and purchasers will be harmed, and Defendant will continue to retain its ill-gotten gains;

      ii.      It would be a substantial hardship for most individual Class Members if they were forced to prosecute individual actions;

      iii.      When the liability of Defendant has been adjudicated, the Court will be able to determine the claims of all Class Members;

iv.       A class action will permit an orderly and expeditious administration of class claims, foster economies of time, effort, and expense and ensure uniformity of decisions;

v.       The lawsuit presents no difficulties that would impede its management by the Court as a class action; and

vi.       Defendant has acted on grounds generally applicable to Class Members, making class-wide monetary and injunctive relief appropriate.

42.     Defendant's violations Pennsylvania's UTPCPL and common law apply to all Class Members, and Plaintiff is entitled to have Defendant enjoined from engaging in illegal and deceptive conduct in the future.

## FIRST CAUSE OF ACTION
### Violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law
### (On Behalf of the Pennsylvania Sub-Class)

43.     Plaintiff repeats and re-alleges the allegations contained in the paragraphs above as if fully set forth herein.

44.     Defendant has engaged in, and continues to engage in, fraudulent and deceptive conduct in violation of 73 PA. CONS. STAT. § 201-3.

45.     Defendant's acts are willful, fraudulent, deceptive, unfair, unconscionable, and contrary to the public policy of Pennsylvania, which aims to protect consumers.

46.     Defendant's misrepresentations and false, deceptive, and misleading statements and omissions with respect to the variable rates it charges for natural gas, as described above, constitute deceptive practices in connection with the marketing, advertising, promotion, and sale of natural gas in violation of 73 PA. CONS. STAT. § 201-3.

47.     Defendant's fraudulent and deceptive conduct was designed to and did result in

{00291715 }                                        15

misunderstandings on the part of Mr. Jordet and other reasonable consumers.

48.     Defendant's false, deceptive, and misleading statements and omissions would have been material to any potential consumer's decision to purchase natural gas from Just Energy.

49.     Defendant knew at the time it promised prospective customers that they will be billed a variable rate based on wholesale costs of natural gas and other business and market conditions that its promise was false because at the time of contract formation Just Energy knew that its variable rate was untethered from business and market conditions.

50.     Defendant's intentional concealments were designed to deceive current and prospective variable rate customers into believing that rates will be commensurate with market conditions and the factors specified in the Agreement.  By concealing its actual pricing strategy (presumably maximizing profits), Defendant benefits from reliance and deprive consumers from informed purchasing decisions and savings.

51.     Defendant also baits and switches potential customers by enticing them with deceptively low Introductory Rates, only to shift them on to Just Energy's exorbitant variable rate plan shortly thereafter.

52.     Defendant's practices are unconscionable and outside the norm of reasonable business practices.

53.     As a direct and proximate result of Defendant's unlawful deceptive acts and practices, Plaintiff and Class Members entered into agreements to purchase natural gas from Just Energy and suffered and continue to suffer an ascertainable loss of monies based on the difference in the rate they were charged versus the rate they would have been charged had Defendant charged a rate based on business and market conditions as specified in the Agreement

or had they not switched to Defendant from their previous supplier.  By reason of the foregoing and pursuant to 73 PA. CONS. STAT. § 201-9.2(a), Defendant is liable to Plaintiff and the Class for trebled actual damages, attorneys' fees, and the costs of this suit.

54.     Plaintiff and Class Members further seek equitable relief against Defendant. Pursuant to 73 PA. CONS. STAT. § 201-9.2(a), this Court has the power to award such relief, including but not limited to, an order declaring Defendant's practices as alleged herein to be unlawful, an Order enjoining Defendant from undertaking any further unlawful conduct, and an order directing Defendant to refund to Plaintiff and the Class all amounts wrongfully assessed, collected, or withheld.

55.     Defendant knows full well that it charges an unconscionably high rate, and the misrepresentations it makes with regard to the rate being market based were made for the purpose of inducing consumers to sign up for Defendant's natural gas supply so that it can reap outrageous profits to the direct detriment of Pennsylvania consumers without regard to the consequences high utility bills cause such consumers.  As such, Defendant's actions are unconscionable and actuated by bad faith, lack of fair dealing, actual malice, or accompanied by wanton and willful disregard for consumers' well-being.  Defendant is therefore additionally liable for punitive damages, in an amount to be determined at trial.

<u>**SECOND CAUSE OF ACTION**</u>
**Breach of Contract and the Implied Covenant of Good Faith and Fair Dealing**
**(On Behalf of the Class)**

56.     Plaintiff repeats and re-alleges the allegations contained in the paragraphs above as if fully set forth herein.

57.     Plaintiff and the Class entered into valid contracts with Defendant for the provision of natural gas.

58.   Pursuant to the Agreement, Defendant agreed to charge a variable rate for natural gas based business and market conditions, such as the wholesale cost of natural gas supply, transportation, distribution, and storage.

59.   Pursuant to the Agreement, Plaintiff and the Class paid the variable rates charged by Defendant for natural gas.

60.   However, Defendant failed to perform its obligations under the Agreement. Indeed, Defendant charged a variable rate for natural gas that was untethered from the pricing components set forth in the parties' contract.

61.   No reasonable consumer, including Mr. Jordet, would interpret the Agreement as granting Defendant with unfettered discretion to price gouge its customers.

62.   Plaintiff and the Class were injured as a result because they were billed, and they paid, a charge for natural gas that was higher than it would have been had Defendant based its rate on the agreed upon factors.

63.   By reason of the foregoing, Defendant is liable to Plaintiff and Class Members for the damages that they have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial.

64.   Additionally, every contract in Pennsylvania contains an implied covenant of good faith and fair dealing in the performance and enforcement of the contract.  The implied covenant is an independent duty and may be breached even if there is no breach of a contract's express terms.

65.   Under the contract, Defendant had unilateral discretion to set the variable rate for natural gas based on market conditions and other factors, such as the amount of profit Defendant hoped to earn from the sale of natural gas in a customer's utility area.

{00291715 }                                    18

66.     Plaintiff reasonably expected that the variable rates for natural gas would, notwithstanding Defendant's profit goals, reflect the market and wholesale prices for natural gas and that Defendant would refrain from price gouging.  Without these reasonable expectations, Plaintiff and other Class Members would not have agreed to buy natural gas from Defendant.

67.     Defendant breached the implied covenant of good faith and fair dealing by arbitrarily and unreasonably exercising its unilateral rate-setting discretion to price gouge and frustrate Plaintiff and other Class Members' reasonable expectations that the variable rate for natural gas would be commensurate with market conditions.

68.     As a result of Defendant's breach, Defendant is liable to Plaintiff and Class Members for actual damages in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
**Unjust Enrichment**
**(On Behalf of the Class)**
**(In the Alternative to Count II)**

69.     Plaintiff repeats and re-alleges the allegations contained in the paragraphs above as if fully set forth herein.

70.     By engaging in the conduct described above, Defendant has unjustly enriched itself and received a benefit beyond what was contemplated in the contract, at the expense of Plaintiff and the Class.

71.     It would be unjust and inequitable for Defendant to retain the payments Plaintiff and the Class made for excessive natural gas charges.

72.     By reason of the foregoing, Defendant is liable to Plaintiff and the other members of the Class for the damages that they have suffered as a result of Defendant's actions, the amount of which shall be determined at trial.

{00291715 }

WHEREFORE, Plaintiff respectfully requests that the Court should enter judgment against Defendant as follows:

1.      Certifying this action as a class action, with a class and a sub-class as defined above;

2.      On Plaintiff's First Cause of Action, awarding against Defendant damages that Plaintiff and Pennsylvania Sub-Class Members have suffered, trebled, and granting appropriate equitable relief;

3.      On Plaintiff's Second Cause of Action, awarding against Defendant damages that Plaintiff and Class Members have suffered as a result of Defendant's actions;

4.      On Plaintiff's Third Cause of Action, awarding against Defendant damages that Plaintiff and Class Members have suffered as a result of Defendant's actions;

5.      Awarding Plaintiff and the Class punitive damages;

6.      Awarding Plaintiff and the Class interest, costs, and attorneys' fees; and

7.      Awarding Plaintiff and the Class such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury.

Dated:  April 6, 2018

Respectfully Submitted By:

Jonathan Shub
Kevin Laukaitis
**KOHN, SWIFT & GRAF, P.C.**
One South Broad Street, Suite 2100
Philadelphia, PA  19107-3304
Tel: (215) 238-1700
Fax: (215) 238-1968
jshub@kohnswift.com
klaukaitis@kohnswift.com

D. Greg Blankinship*
Todd S. Garber*
Chantal Khalil*
**FINKELSTEIN, BLANKINSHIP,**
**FREI-PEARSON & GARBER, LLP**
445 Hamilton Avenue, Suite 605
White Plains, New York 10601
Tel: (914) 298-3281
Fax: (914) 824-1561
gblankinship@fbfglaw.com
tgarber@fbfglaw.com
ckhalil@fbfglaw.com
* *Pro Hac Vice Application Forthcoming*

*Attorneys for Plaintiff and the Class*